UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

RONALD ZOLTAK,

        Plaintiff,

        v.                                    Case No. 08-C-0959

SUN LIFE AND HEALTH INSURANCE COMPANY,

        Defendant.

---

DECISION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DOC. # 11) AND DISMISSING CASE

Plaintiff, Ronald Zoltak, filed this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., alleging that he was entitled to benefits under his disability policy, yet was denied short-term and long-term disability[1] benefits following a disabling work-related back injury. Defendant, Sun Life Health Insurance Company, is seeking summary judgment and dismissal of the case contending that it did not act arbitrarily and capriciously when it denied Zoltak's claim.[2] For the reasons set forth below, Sun Life's motion will be granted and this case will be dismissed.

---

[1] Although Zoltak never sought long-term disability benefits, this court allows Zoltak's claim for both types of benefits to remain "because an award of short-term benefits is a condition to receipt of long-term benefits; the parties disagree about whether [plaintiff]'s disabled, not the duration of any disability." *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 977 (7th Cir. 1999). Like *Perlman*, the parties in this case are fighting over whether Zoltak is disabled, and while timing does play a part in the disagreement it is only as to when any disability began, not when or if it ended.

[2] A brief in support of Zoltak's motion for summary judgment was filed as Docket Entry #10, however, Zoltak failed to file a summary judgment motion. He also did not submit proposed findings of fact with his moving papers as required by Civil L.R. 56.2(a). Because Zoltak failed to comply with Civil L.R. 56.2, the court will not consider his brief "in support of summary judgment" or Sun Life's opposition brief.

# FINDINGS OF FACT[3]

Plaintiff, Ronald Zoltak (Zoltak), a resident of Greenfield, Wisconsin, filed a claim seeking short-term disability benefits under his employee welfare benefit plan (Plan) on or about February 15, 2007. (Doc. # 1 at ¶ 1; AR 113-14.) The Plan was sponsored and maintained by Zoltak's employer, The Jansen Group (Jansen). (AR 1 and 115.) It was underwritten and insured by Sun Life and Health Insurance Company[4] (Sun Life), a Wisconsin licensed business, pursuant to the terms of the Group Short-Term and Long-Term Disability Insurance Policies. (AR 1-33 and 115-136; Doc. # 1 at ¶ 2.) Sun Life determined that Zoltak did not satisfy the conditions precedent to eligibility for short-term disability[5] benefits under the terms of the Policy and denied his claim. (AR 107-08.)[6] The Plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA")

The short-term disability policy provides in relevant part:

---

[3] Zoltak failed to respond to Sun Life's proposed findings of fact as required by Civil L.R. 56.2(b)(1). Pursuant to Civil L.R. 56.2(e), the lack of response means that the court must conclude that no genuine material issue of fact exists as to any of the proposed findings of fact and adopt the facts as proposed by Sun Life as its own. The following facts are taken from Sun Life's statement of proposed findings of fact.

[4] Sun Life refers to itself by many names in its proposed findings. *See* Def.'s Statement of Proposed Findings of Fact, 1 n. 1. Thus, for consistency, all references are to Sun Life.

[5] Def.'s Statement of Proposed Findings of Fact states incorrectly that Sun Life determined Zoltak was ineligible for long-term disability benefits, however, the March 5, 2007, letter actually denies short-term disability benefits to Zoltak. *See* Def.'s Statement of Proposed Findings of Fact, 3 and AR 107.

[6] Sun Life's proposed findings misidentify the supporting documents at pages 424-29. The March 5, 2007, letter denying short-term disability benefits to Zoltak is found at pages 107-08 of the administrative record and is cited as such.

**Termination of Employee Insurance**

Insurance coverage for you will automatically cease on the earliest date shown below:

[…]

2. On the date you cease to be in a class of Employees who are eligible for such coverage. This means you are no longer an active full-time Employee.

(AR 128) Under the short-term disability policy, "Total Disability" is defined as follows:

**Total Disability and Totally Disabled**
Total Disability must be caused by Sickness or Injury and must commence while you are insured under the policy. You will be considered Totally Disabled if you are unable to perform all the material duties of your Regular Occupation.

(AR 122) Sun Life has discretion to make claim and eligibility determinations:

**CLAIMS FIDUCIARY:**
GE Group Life Assurance Company is a fiduciary, as that term is used in ERISA and the regulations which interpret ERISA, with respect to insurance policies under which you, and if applicable, your dependents are insured. In this capacity, we are charged with the obligation, and possess, discretionary authority to make claim, eligibility, and other administrative determinations regarding those policies, and to interpret the meaning of their terms and language.

GE Group Life Assurance Company, as Claims Fiduciary, shall have the sole and exclusive discretion and authority to carry out all actions involving claims procedures explained in the Policy. The Claims Fiduciary shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits. All findings, decisions and/or determinations of any type made by the Claims Fiduciary shall not be disturbed unless the Claims Fiduciary has acted in an arbitrary and/or capricious manner. Subject to the requirements of law, the Claims Fiduciary shall be the sole judge of the standard of proof required in any claims for benefits and/or in any question of eligibility for benefits. All decisions of the Claims Fiduciary shall

> be final and binding on all parties. Whenever a decision on a claim is involved, the Claims Fiduciary is given broad discretionary powers, and the Claims Fiduciary shall exercise said powers in a uniform and nondiscriminatory manner in accordance with the Plan's terms. Our authority is limited to such insurance policies and we are not a fiduciary of any other aspect of the Plan, insured or otherwise. We are not the Plan Administrator (as that term is understood under ERISA) and we are not responsible for any asset or property which belongs to the Plan.

(AR 134.)

Zoltak (who was employed in a sedentary executive position) asserts that he became disabled due to back pain on January 29, 2007. (AR 46, 59, 106, Doc. # 1 at ¶ 9.) According to the administrative record, Zoltak maintains that he injured his back on January 21, 2007, while at work, however, Jansen had no record of an injury. (Doc. # 1 at ¶ 6; AR 88.) Zoltak has a long history of back problems and underwent back surgery in 1984 and again in 1990. (AR 62, 88.) Jansen terminated Zoltak's employment on January 29, 2007, the day he claims his disability commenced. (AR 79.)

The medical information in the administrative record is minimal. (AR 59.) Nothing indicates that Zoltak received treatment on January 21, 2007, the date on which he claims he injured his back. (AR 1- 136.) Moreover, despite his claimed back injury, Zoltak traveled to Las Vegas to attend a meeting and the records do not show that Zoltak stopped working due to any physical impairment. (AR 62, 59, 88; AR 1-136, 88.)

Zoltak saw a doctor on January 29, 2007, after his formal termination. (AR 62.) According to the notes of the physician, Dr. James A. Rydlewicz, Zoltak underwent surgeries on his lumbar spine in 1984 and 1990.[7] (Id.) Zoltak informed the doctor that the

---

[7] Sun Life's proposed findings contained some typographical errors which the court has remedied, i.e. the spelling of Zoltak's name and the date of the plaintiff's initial back surgery.

prior week "his back went out." (AR 62.) With the exception of an MRI study which was performed on January 30, 2007, Zoltak did not seek additional treatment until March 27, 2007, when he told the doctor that he had "some days which are good and some which are bad." (AR 62-63.) On the following visit, which was May 7, 2007, Zoltak stated to the doctor that "if he is sedentary, it's fairly comfortable" and complained of pain while kneeling or engaging in any increased work. (AR 64.)

Dr. Rydlewicz completed a disability claim form at Zoltak's request stating that Zoltak "has been continuously unable to work (since) 1/29/07." (AR 73.) However, Dr. Rydlewicz's January 29, 2007, office note did not identify any work restrictions. (AR 62-63.) The first time that Dr. Rydlewicz identified work restrictions was February 15, 2007, when he completed Zoltak's disability claim form. (AR 73.)

Zoltak's medical records were reviewed by Thomas Hicks, M.D., at Sun Life's request. (AR 59.) Based on his review of the "limited medical records" that were provided, Dr. Hicks concluded that it was "medically reasonable to conclude" that Zoltak was capable of performing his prior sedentary occupation. (Id.) In support of this conclusion, Dr. Hicks referred to the lack of motion or sensory deficits on examination. (Id.) Also, he concluded that the MRI report reflected conditions that were chronic and did not represent an acute injury. (Id.)

On March 5, 2007, Sun Life notified Zoltak that his claim for short-term disability benefits was denied. (AR 107.) The letter advised that his coverage under the group policy terminated before his claimed disability began. (Id.) In addition, Zoltak was informed of his appeal rights under ERISA. (Id.)

Sun Life reviewed Zoltak's claim again following his appeal and concluded that he was not totally disabled. (AR 52-55.) The denial letter mentioned that Zoltak went to Las

Vegas to attend a convention after he claims that he injured his back. (AR 53.) Moreover, it noted that the doctor placed no restrictions or limitations on Zoltak during a January 29, 2007, office visit. (Id.) Finally, the appeal denial letter referred to Zoltak's Severance Agreement which preceded the claimed disability. (Id.) As a consequence, the denial of benefits was upheld. (AR 52-54.)

## GOVERNING LAW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 470 (7th Cir.2007).

The abuse of discretion standard is applied by courts when reviewing benefit determinations under ERISA plans which give discretion to the plan administrator. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343 (2008) (reiterating the standard of review as the deferential abuse of discretion standard where the ERISA plan provides the administrator or fiduciary discretionary authority to determine eligibility for benefits and citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)); *Davis v. Unum Life Ins. Co.*,

444 F.3d 569, 575-76 (7th Cir. 2006) (holding that when the terms of an employee benefit plan afford the plan administrator broad discretion to interpret the plan and determine benefit eligibility, judicial review of the administrator's decision to deny benefits is limited to the arbitrary and capricious standard).[8]  Courts reviewing an administrator's decision to deny benefits under the arbitrary and capricious standard will only reverse it if the decision is clearly unreasonable.  *Hightshue*, 135 F.3d at 1147; *Davis*, 444 F.3d 576.  Under this standard, a court will uphold an administrator's "denial of benefits so long as that decision has rational support in the record.  Questions of judgment are left to the plan administrator, and it is not [the court's] function to decide whether [it] would reach the same conclusion as the administrator."  *Davis,* 444 F.3d at 576 (citations and internal quotation marks omitted).

When a claim administrator is an insurer, courts recognize a potential conflict of interest in determining whether the administrator acted arbitrarily and capriciously. *Hightshue*, 135 F.3d at 1148.  In *Metro. Life Ins. Co. v. Glenn*, the Supreme Court held that a reviewing court must be mindful that the conflict of interest that arises from an entity's dual role as plan administrator and payor of the plan benefits is a factor in determining whether the entity abused its discretion when denying the claim for benefits.  *Glenn,* 554 U.S. 105, ___, 128 S.Ct. 2343, 2348-51.  However, the Court refused to enunciate a precise standard, stating only that the proper weight this factor should be given depends on the likelihood that the conflict of interest affected the benefits decision.  *Id.* at 2351-52.

Finally, when using the arbitrary and capricious standard of review, a court should consider only the evidence that was before the administrator when it made its

---

[8] *See also Sisto v. Ameritech Sickness and Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005) (same); *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (same); *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir. 1998) (same).

decision. *Hess*, 274 F.3d at 462; *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 981-82 (7th Cir. 1999) ("Deferential review of an administrative decision means review on the administrative record.").

## DISCUSSION

Sun Life asserts that its denial of Zoltak's claim for benefits was not arbitrary and capricious and should, therefore, be upheld. It maintains that it relied on Dr. Hicks' independent review of medical records to conclude that Zoltak was not disabled during the coverage period, as its own assessment of the administrative record.[9]

Zoltak acknowledges that he bears the burden of proof on the pending summary judgment motion and contends that Sun Life blatantly disregarded the medical information provided by his treating physician in support of his disability claim and failed to provide all of his medical records to its independent reviewer. In addition, Zoltak maintains that he was employed through January 29, 2007, that he became disabled on that date, and that he was covered by the short-term and the long-term disability policies at that time. Finally, Zoltak notes that Dr. Hicks did not perform a hands-on examination and merely reviewed the documents.

### **Denial of Benefits**

The Seventh Circuit has stated the following: "If the decision made by the administrator 'was made rationally and in good faith,' we will not second guess whether the decision is right." *Hightshue*, 135 F.3d at 1147 (citations omitted).

> Under this standard, we will uphold the plan's decision as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based

---

[9] Sun Life also makes arguments related to Zoltak's severance agreement, but these are not germane to the court's determination, and are therefore, not addressed here.

> on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factor that encompass the important aspects of the problem.

*Sisto,* 429 F.3d at 700 (citations and quotation marks omitted). *See also Hess*, 274 F.3d at 461. With this in mind the court turns to the matter at hand.

Sun Life informed Zoltak that his claim for short-term disability benefits was denied by letter dated March 5, 2007. This letter advised that "[b]ased on the information available to us, your insurance under this policy terminated on 1/29/07 and your disability then commenced on 1/30/07." (AR 107.)

Zoltak's employment was terminated on January 29, 2007, and under the Termination Provisions of the short-term disability policy, his coverage for disability benefits terminated automatically on that date. (AR 34-39, 78-87 and 128.) Citing medical records and other information available to it, Sun Life determined that Zoltak's disability did not commence until January 30, 2007. (AR 107.) Sun Life's decision was further informed by notes from Sun Life's employees concerning Zoltak's last day of work and review of the clinical information forwarded by Dr. James A. Rydlewicz (i.e. the doctor's disability statement noting no limitations/restrictions, no future appointments, and a generic order that Zoltak not work as of the date he filed his claim for disability benefits). (AR 46-49 and 109.) Initial denial of Zoltak's claim on this basis was not "downright unreasonable." *See Sisto*, 429 F.3d at 700 (quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004)).

On appeal of the initial denial of benefits, a claims analyst, who had no previous involvement in the review of Zoltak's file and was monitored by the Wisconsin Office of the Commissioner of Insurance, assessed the benefits claim. (AR 97-106.)

Ultimately, the denial of Zoltak's claim was upheld as indicated in Sun Life's letter of May 31, 2007. (AR 52-54.) The analyst wrote, after reviewing all of the available medical and employment information, Zoltak did "not appear to have been disabled as defined and required by the contract through the date of January 29th, when your insurance coverage ceased as a result of your termination of employment." (AR 53.) As a consequence, Sun Life denied benefits "on the basis that any disability did not commence while you were insured under the Jansen Group contract." (Id.) On June 5, 2007, Sun Life informed Zoltak that its decision took into account the opinion of Dr. Thomas Hicks, a consulting specialist in occupational medicine. (AR 51.) The letter stated that "based on our review of all the medical information submitted, it was our determination that it did not substantiate a level of impairment that would have precluded you from performing your occupation at Jansen Group through the period when you were a covered employee there." (Id.)

As to the conclusion that Zoltak is not disabled, Sun Life cited to the short-term policy's definition of totally disabled. (AR 52.) It then provided specific reasons why Zoltak's evidence supports the conclusion that he was not disabled. (AR 53.) Sun Life pointed out that Zoltak's medical records indicate that he has a history of back surgery and "he would usually get back pain once in a while." (AR 53 and 62.) Moreover, it observed that after injuring his back on January 21, 2007, Zoltak still traveled to Las Vegas for a convention. (AR 62, 75.) After Zoltak saw his treating physician on January 29, 2007, he was not given any work limitations or restrictions even though he had already sustained the back injury and was headed to work. (AR 62-63 and 71.) Finally, Dr. Hicks concluded after reviewing the available medical records that Zoltak did "not have a level of impairment that precludes him from performing his own sedentary occupation." (AR 59.)

As to the conclusion that Zoltak was not covered under the short-term disability policy when any disability commenced, Sun Life referenced in its May 31, 2007, letter to Zoltak two provisions of the short-term disability policy. (AR 52 and 128-30.) Furthermore, notes of conversations with Zoltak's employer, notes of Zoltak's conversations with Sun Life, as well as the language of the severance agreement that Zoltak signed, state that Zoltak's long-term and short-term disability benefits terminated on January 29, 2007. (AR 71, 75, 76, 79-80 and 88.) Hence, there is ample evidence in the administrative record to sustain Sun Life's decision to deny Zoltak's claim.

Nonetheless, Zoltak argues that under the Time Periods provision of the short-term disability policy[10] his eligibility for coverage did not end until 12:01 a.m. on January 30, 2007. (AR 130.) However, this contention is undercut by Zoltak's severance agreement, which states that his coverage terminated on January 29, 2007.

Zoltak further asserts that Sun Life failed to consider all pertinent evidence he offered to support his claim, such as the information contained in the "Attending Physician's Statement for Short Term Disability Claims," and his medical records which indicate that he had difficulty sitting and walking while in Las Vegas. On the other hand, Sun Life's notes disclose that Dr. Rydlewicz's statement was taken into account. (AR 46-47 and 111-13.) Additionally, the Attending Physician's Statement appears in the administrative record in three separate places. (AR 73, 106, 109.) Also, Dr. Hicks' report mentions Dr. Rydlewicz's acknowledgment that Zoltak had difficulty sitting and walking while in Las Vegas. (AR 59).

Because Dr. Hicks did not address Dr. Rydlewicz's statement that Zoltak is disabled and stated that there were "limited medical records provided," Zoltak submits that

---

[10] The long-term disability policy contains the exact same provision. (AR 25)

Sun Life failed to provide Dr. Hicks with his medical records and could not have reasonably relied on the doctor's opinion.

"Seeking independent expert advice is evidence of a thorough investigation, and provided that the fiduciary had investigated the expert's qualifications, has provided the expert with complete and accurate information, and determined that reliance on the expert's advice is reasonably justified under the circumstances, the fiduciary's decision will be respected...." *Hightshue*, 135 F.3d at 1148. Few medical records were in the administrative record, which Zoltak agreed by stipulation contained everything he submitted to Sun Life to consider. (Docket # 14.) It seems reasonable that Sun Life did not fail to provide Dr. Hicks with all of the medical records submitted by Zoltak and that Dr. Hicks considered all of those medical records. That Dr. Hicks did not mention the Attending Physician's Statement, which is only submitted to the insurer to support the beneficiary's claim for benefits, does not mean that Dr. Hicks was not provided with it. His focus as the medical consultant could reasonably have been on the actual medical records, i.e. Dr. Rydlewicz's notes, to analyze whether he would come to a similar conclusion regarding Zoltak's limitation.

Zoltak's argument that Dr. Hicks never examined him does not tip the evidence in his favor. The Seventh Circuit has stated that there is no

> authority that generally prohibits the commonplace practice of doctors arriving at professional opinions after reviewing medical files. In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation. It is reasonable, therefore, for an administrator to rely on its doctors' assessments of the file and save the plan the financial burden of conducting repetitive tests and examinations.

*Davis*, 444 F.3d at 577. Thus, according to the law of this circuit, Sun Life was not required to have Dr. Hicks perform a hands-on examination of Zoltak to enable it to rely on his opinion. Moreover, nothing in the administrative record or Dr. Hicks' report demonstrate that he was not supplied with Zoltak's entire file.

For these reasons,

IT IS ORDERED that defendant's motion for summary judgment is granted.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 30th day of November, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE